

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00099-CR

PETRIT DIKO                                          APPELLANT

V.

THE STATE OF TEXAS                               STATE

----------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2012-0431-C

----------

## OPINION

----------

### I. INTRODUCTION

Appellant Petrit Diko was convicted by a jury for the murder of his wife, Mimoza Diko. *See* Tex. Penal Code Ann. § 19.02(b), (c) (West 2011). The jury assessed his punishment at ninety-nine years' confinement, and the trial court sentenced him accordingly. In one issue, Diko argues that the trial court erred in its charge to the jury. We will affirm.

## II. FACTUAL BACKGROUND

On December 7, 2011, Diko called 911 and told the dispatcher that he had killed his wife.[1] He also told the dispatcher that he needed an ambulance and police sent to his apartment complex. Officer Matthew Harmuth of the Denton Police Department was dispatched to the scene.[2] When Officer Harmuth arrived, Diko approached him and stated that he had killed his wife. Diko then told Officer Harmuth that his wife needed help and pointed toward his upstairs apartment. Officer Harmuth went up to the apartment, opened the door, and found Mimoza—still alive—lying on the ground in a large pool of blood. He saw puncture wounds to her face, head, and hands, and observed that she was gasping for air. Officer Harmuth then secured Diko and asked for paramedics to come to the scene. Mimoza was eventually transported to the hospital by helicopter. She was pronounced dead on arrival.

Other officers, including Detective Jeffrey Laughlin, arrived on the scene. Detective Laughlin testified that when he arrived at the apartment he noticed that Diko had blood on his hands and what appeared to be small cuts on his face and mouth. Donna Krouskup, a crime scene technician for the Denton Police Department, was tasked with gathering evidence from the crime scene.

---

[1] We note that English is not Diko's first language. Diko, Mimoza, and their two sons immigrated to the United States from Albania in 2007.

[2] Before the police arrived, Diko's neighbor, Jennifer Uribes, saw Diko moving a blood-stained mattress outside his apartment.

Krouskup recovered blood-stained pieces of wood that were part of a bed frame, a knife that had blood on its hilt, and a screwdriver and screwdriver bit that were stained with blood and hair.

Dr. Sheila Spotswood performed Mimoza's autopsy. Dr. Spotswood testified that Mimoza had "a large number of injuries" to her head, neck, trunk, chest, abdomen, back, and extremities. She also testified that Mimoza had thirty-nine stab and laceration wounds and that Mimoza's "head had some large gaping blunt force injuries." Dr. Spotswood testified that Mimoza's most severe head injuries were caused by something that was blunt and heavy and that such injuries were consistent with someone being hit over the head with a piece of wood or a bed rail. She observed that some of Mimoza's stab wounds were consistent with being caused by "something like a knife" and that other stab or puncture wounds were consistent with being caused by a screwdriver. Dr. Spotswood determined that Mimoza's cause of death was homicide caused by blunt and sharp force injuries.

### III. JURY UNANIMITY

In his sole issue, Diko contends that the trial court gave a defective charge because the charge failed to require the jury to return a unanimous verdict.

### A. Diko's Complaint regarding Unanimity

Diko asserts that he was charged with two separate criminal acts—murder under penal code section 19.02(b)(1) (intentionally or knowingly causing death) and murder under penal code section 19.02(b)(2) (committing an act clearly

3

dangerous to human life with the intent to cause serious bodily injury)—and that the trial court violated the unanimity requirement by allowing the jury to find him guilty of murder without requiring the jury to agree on which specific murder offense he committed.[3]  *See* Tex. Penal Code Ann. § 19.02(b)(1), (2).  Diko points to the following statements made during closing argument to support his contention that the unanimity requirement was violated:

> [Prosecutor]:  And there's only a couple of things I want to point out to you as you're kind of working your way through this charge.  And I'll take you back through voir dire and when we talked about the two different ways that a murder could be committed: Either intentionally or knowingly causing the death of an individual, or, with the intent to cause serious bodily injury, commit an act clearly dangerous to human life that causes the death of an individual.
>
> And the reason I bring you back to that is because it is an either/or proposition, meaning six of you could think he intentionally

---

[3]The portion of the charge Diko complains of reads:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of December, 2011, in Denton County, Texas, the defendant, PETRIT DIKO, did then and there intentionally or knowingly cause the death of an individual, namely, Mimoza Diko, by striking or cutting or stabbing Mimoza Diko with a screwdriver or a knife or scissors or a metal bed frame or a piece of wood or an object unknown to the Grand Jury;
>
> -OR-
>
> If you find from the evidence beyond a reasonable doubt that on or about the 7th day of December, 2011, in Denton County, Texas, the defendant, PETRIT DIKO, did then and there, with intent to cause serious bodily injury to an individual, namely, Mimoza Diko, commit an act clearly dangerous to human life that caused the death of said Mimoza Diko, by striking or cutting or stabbing Mimoza Diko with a screwdriver or a knife or scissors or a metal bed frame or a piece of wood or an object unknown to the Grand Jury, then you will find the defendant, guilty of murder as charged in the indictment.

4

or knowingly caused the death of Mimoza Diko and six of you could think that he committed an act clearly dangerous to human life and caused the death of Mimoza Diko. You don't have to be unanimous on which way. I submit to you that we proved beyond a reasonable doubt that he intentionally or knowingly caused the death of Mimoza Diko and we really don't need to go any further than that.

## B. Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.*

## C. The Law regarding Unanimity

Jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). Simply put, every juror must agree that "the defendant committed the same, single, specific criminal act." *Id.* Jurors, however, need not be unanimous about the specific manner and means of how an offense was committed. *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011); *see Schad v. Arizona*, 501 U.S. 624, 630, 111 S. Ct. 2491, 2496 (1991) (holding that when the *actus reus* was "murder," all twelve jurors had to agree that the defendant committed the act of murder but did not need to be unanimous on whether the defendant committed murder "with premeditation or in the course of committing a robbery").

This court, on three previous occasions, has rejected the argument advanced by Diko—that sections 19.02(b)(1) and 19.02(b)(2) constitute two

5

separate offenses and that a trial court violates the unanimity requirement by allowing the jury to find a defendant guilty without requiring the jury to agree on which offense the defendant committed.[4] *See Lozano v. State*, 359 S.W.3d 790, 821–22 (Tex. App.—Fort Worth 2012, pet. ref'd); *Bundy v. State*, 280 S.W.3d 425, 431–33 (Tex. App.—Fort Worth 2009, pet. ref'd); *Davis v. State*, 268 S.W.3d 683, 710–12 (Tex. App.—Fort Worth 2008, pet. ref'd).[5] As we stated in *Lozano*, "penal code sections 19.02(b)(1) and 19.02(b)(2) do not describe different offenses; rather, they set forth alternative methods of committing the same offense." 359 S.W.3d at 821 (citing *Bundy*, 280 S.W.3d at 431–33). Thus, "[t]he jury unanimity requirement is not violated when, as here, the defendant was indicted under a statute providing alternate means of committing the same offense." *Lozano*, 359 S.W.3d at 821 (citing *Bundy*, 280 S.W.3d at 433; *Davis*, 268 S.W.3d at 712).

Our sister courts have similarly resolved this issue. *See Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Both

---

[4]Diko candidly acknowledges this binding precedent, but urges us to overturn our prior opinions regarding this issue.

[5]We note that the prosecutor in *Davis* made similar statements during closing argument as the statements made by the prosecutor here. In *Davis*, the prosecutor told the jury: "And if six of you say, well, I believe it was an intentional killing and six of you said that it's an act clearly dangerous to human life, you can find him guilty of murder." 268 S.W.3d at 711. We held in *Davis* that the trial court did not err by overruling Davis's objection to the statements made by the prosecutor. *Id.* at 712.

the indictment and the jury charge indicate that the only offense involved in this case was murder by any of the three methods set forth in the Penal Code . . . . The jury returned a unanimous verdict that appellant committed murder. The jury was not required to agree unanimously as to the manner and means by which appellant did so."); *London v. State*, 325 S.W.3d 197, 207 (Tex. App.—Dallas 2008, pet. ref'd) ("We reject appellant's argument that the jury charge alleged two separate statutory offenses of murder, allowing the jury to return a non-unanimous verdict of guilty."); *Garcia v. State*, 246 S.W.3d 121, 141 (Tex. App.—San Antonio 2007, pet. ref'd) ("[W]hether the jury determined that Garcia intentionally or knowingly caused the death of Lesa Garcia, or that he caused her death by committing an act clearly dangerous to human life with the intent to cause serious bodily injury, there was only one single crime of murder. As a result, the instant case does not present the possibility of a less than unanimous conviction due to the alleged commission of multiple crimes or acts." (citation omitted)); *Yost v. State*, 222 S.W.3d 865, 877–78 (Tex. App.—Houston [14th Dist.] 2007, pet ref'd) ("Here, [section 19.02] does not describe different offenses, but merely sets forth different methods of committing the same offense. Although sections 19.02(b)(1) and (b)(2) differ in their descriptions of the mental state required for culpability, jurors are not required to agree on the defendant's specific mental state . . . ." (citation omitted)); *Barfield v. State*, 202 S.W.3d 912, 916 (Tex. App.—Texarkana 2006, pet. ref'd) ("The charge appropriately submitted alternative ways of violating the applicable statute. The jury's verdict

7

represents the necessary unanimous finding that Barfield murdered Burns under Section 19.02 of the Texas Penal Code.").

### D. Application of the Law to the Facts

Here, the jury was authorized in the charge to find Diko guilty of murder if he intentionally or knowingly caused Mimoza's death or if he, with intent to cause serious bodily injury to Mimoza, committed an act clearly dangerous to human life that caused Mimoza's death. The jury returned a general verdict finding Diko guilty of the offense of murder. Based on this court's binding precedent interpreting the murder statute, we hold that the trial court did not err in submitting its charge to the jury.[6] *See Lozano*, 359 S.W.3d at 821–22; *Bundy*, 280 S.W.3d at 431–33; *Davis*, 268 S.W.3d at 710–12.

We overrule Diko's sole issue.

### IV. CONCLUSION

Having overruled Diko's sole issue, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED: April 14, 2016

---

[6]Diko's reliance on *Ngo* is misplaced. *See Lozano*, 359 S.W.3d at 822 (distinguishing *Ngo*); *Davis*, 268 S.W.3d at 712 (same).

8